IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TAMMY R. RANES,                    §
                                   §
                Plaintiff,         §
                                   § Civil Action No. 3:08-CV-2030-D
VS.                                §
                                   §
MICHAEL J. ASTRUE, COMMISSIONER    §
OF SOCIAL SECURITY,                §
                                   §
                Defendant.         §

MEMORANDUM OPINION

Plaintiff Tammy Renee Ranes ("Ranes") brings this action under §§ 205(g) and 1631(c) of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income. For the reasons that follow, the Commissioner's decision is affirmed.

I

Ranes was born in 1968 and attained a twelfth-grade education. She has been previously employed as a dental hygienist. Ranes applied for disability benefits on November 30, 2005, alleging that she became disabled on September 15, 2005 due to Crohn's disease, a digestive disorder. She maintains that her Crohn's disease causes her diarrhea, nausea and vomiting, muscle and joint pain, arthritis, lack of energy, and depression, and requires that she work near bathroom facilities.

The Commissioner denied Ranes's application initially and on

reconsideration, and Ranes requested a hearing.  At the hearing, the Administrative Law Judge ("ALJ") concluded that Ranes was not disabled.   The ALJ determined at step two of the sequential evaluation process that Ranes's Crohn's disease was a severe impairment.  At step three, he found that her Crohn's disease did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found at step four that Ranes retained the residual functional capacity ("RFC") to perform the full range of light work, "reduced by the need to be near bathroom facilities."  R. 16.   Based on this finding, the ALJ determined that Ranes could not perform her past relevant work as a dental hygienist because the job did not allow for frequent, unscheduled bathroom breaks.  At step five, considering Ranes's age, education, work experience, and RFC, the ALJ concluded that Ranes was not disabled because she could perform some service-related or clerical jobs existing in significant numbers in the national economy, including housekeeper, mail clerk, and office clerk.  Ranes sought review by the Appeals Council, which denied her request.  The ALJ's decision thus became the final decision of the Commissioner.

Ranes now seeks judicial review.  She contends on five grounds that the Commissioner's decision is erroneous: (1) the Commissioner did not fulfill his statutory duty to furnish the court a complete transcript of the administrative record; (2) the ALJ applied an improper standard to evaluate severity of impairment at step two;

(3) at step three, the ALJ erred in failing to find that Ranes's weight loss due to Crohn's disease met a listing-level impairment; (4) the ALJ failed to properly consider medical source opinions in the record; and (5) the ALJ failed to properly evaluate Ranes's credibility.

## II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F. 3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)).  "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983).  Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).  The resolution of conflicting evidence is for the Commissioner rather than for this court.  *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or that has lasted or could be expected to last for a continuous period of not fewer than 12 months.  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d

at 563; *Martinez*, 64 F.3d at 173-74.   The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2009).   "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).   At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact.   The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians;

(3) the claimant's subjective evidence of pain and disability; and
(4) age, education, and work history. *Martinez*, 64 F.3d at 174
(citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per
curiam)). "The ALJ has a duty to develop the facts fully and
fairly relating to an applicant's claim for disability benefits."
*Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty,
[the] decision is not substantially justified." *Id*. Reversal of
the ALJ's decision is appropriate, however, "only if the applicant
shows that he was prejudiced." *Id*. The court will not overturn a
procedurally imperfect administrative ruling unless the substantive
rights of a party have been prejudiced. *See Smith v. Chater*, 962
F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

                                III

     The court first considers Ranes's argument that this matter
should be remanded based on the Commissioner's failure to file a
complete transcript of the administrative record.

     The Commissioner did not furnish the court a copy of the
Addendum to Request for Review ("Addendum") that Ranes submitted to
the Appeals Council and that included additional medical evidence
that Ranes wanted considered. The Commissioner erred in this
respect. *See* 42 U.S.C. § 405(g) (instructing Commissioner to file
with the court a "certified copy of the transcript of the record").
But Ranes has provided the court a copy, and the record is

                              - 6 -

complete.  A remand is not warranted on this basis.[1]

Ranes also infers from the Commissioner's failure to furnish the Addendum that the Appeals Council may not have considered it in denying her request for review.  Given that Ranes's "Request for Review of Hearing Decision/Order" form specifically refers to the "enclosed addendum," R. 6, this assertion is at best speculative and does not support a remand.

The court therefore concludes that Ranes has failed on either basis to demonstrate reversible error.

IV

The court now turns to the ALJ's step-two determination.

A

At step two, an ALJ considers whether the claimant suffers from any severe medically determinable physical or mental impairments.  *See* 20 C.F.R. §§ 404.1508, 404.1520(c) (2009).  The Fifth Circuit recently clarified in *Randall v. Astrue*, 570 F.3d 651, 657-59 (5th Cir. 2009), that the question of the *existence of* a medically determinable impairment is distinct from, and logically

---

[1]Ranes argues in reply that she is prejudiced by the Commissioner's error because the court cannot consider the evidence in the Addendum.  She maintains that the court can "order additional evidence to be taken before the Commissioner of Social Security" only upon a showing that "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." This argument is misplaced, however, because the court is not ordering new evidence to be taken before the Commissioner.  And, as noted *infra*, Ranes's assertion that the Appeals Council did not consider the evidence is wholly speculative.

antecedent to, the question of its *severity*.  *See id.* at 657-58
(examining the Act and pertinent regulations and reasoning that
both "make it plain that the two inquiries are distinct").  Under
the Social Security Administration ("SSA") regulations, an
"impairment must result from anatomical, physiological, or
psychological abnormalities which can be shown by medically
acceptable clinical and laboratory diagnostic techniques.  A
physical or mental impairment must be established by medical
evidence consisting of signs, symptoms, and laboratory findings,
not only by [a claimant's] statement of symptoms."  20 C.F.R.
§ 404.1508 (2009).  If a medically determinable impairment or
combination of impairments is found to exist, the regulations
provide that it is severe if it "significantly limits [a
claimant's] physical or mental ability to do basic work
activities."  20 C.F.R. § 404.1520(c) (2009) ("Severity
Regulation").  The Fifth Circuit has held, however, that a literal
interpretation of the Severity Regulation would be inconsistent
with the Act because it would sometimes lead to the denial of
benefits to claimants unable to perform substantial gainful
activity.  *See Stone v. Heckler*, 752 F.2d 1099, 1101-03 (5th Cir.
1985).  Accordingly, in this circuit, an ALJ may properly conclude
that an impairment is not severe only after expressly finding that
it "is a slight abnormality [having] such minimal effect on the
individual that it would not be expected to interfere with the

individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (alteration in original) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984) (per curiam)). Further, to ensure that the Severity Regulation is construed in accordance with this standard, *Stone* holds that the Fifth Circuit will

> in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 4040.1520(c) is used.

*Id.* at 1106.

B

Ranes contends that the ALJ prejudicially erred at step two because he did not consider whether her alleged depression was a severe impairment. She maintains that the ALJ failed to evaluate severity under the *Stone* standard and that the court must remand the case on this basis. Ranes points out that the ALJ did not cite *Stone*, and she argues that he applied the same standard as the one that was recently held to be incorrect in *Sanders v. Astrue*, 2008 WL 4211146, at *6-*8 (N.D. Tex. Aug. 21) (Ramirez, J.), *recommendation adopted*, (N.D. Tex. Sept. 12, 2008) (Fish, J.) (order).

The Commissioner responds that, although the ALJ did not cite *Stone*, he applied the correct standard in evaluating severity. The

Commissioner also disputes that Ranes was prejudiced by the ALJ's alleged error, and he argues that no evidence indicates that Ranes's alleged depression is a severe impairment or causes her any significant functional limitations.

C

The parties frame the pertinent issue as whether the ALJ applied the proper standard to evaluate the severity of Ranes's alleged depression. The court concludes, however, that it need not reach this question because the record lacks substantial evidence to support the predicate finding that Ranes suffers from the medically determinable mental impairment of depression. As explained above, the step-two determination is bipartite, and the question of severity, to which *Stone* is addressed, does not arise until a medically determinable impairment or combination of impairments is found to exist. In her brief, Ranes points to two unsupported assertions as her sole proof of depression. First, the gastroenterologist who treated Ranes's Crohn's disease, John R. Hyatt, Jr., M.D. ("Dr. Hyatt"), checked a box on his September 2006 "Crohn's & Colitis Residual Functional Capacity Questionnaire" ("RFC Questionnaire") to indicate that "emotional factors" contributed to the severity of her symptoms and functional limitations. R. 196. Second, Ranes stated on her "Disability Report - Appeal" form that she has been "depressed because of everything," making it hard for her to get out of bed in the

mornings.  R. 140, 143.  These assertions are not "medical evidence consisting of signs, symptoms, and laboratory findings" that are necessary to support the finding of a medically determinable impairment.  20 C.F.R. § 404.1508 (2009).  Nor is there any evidence that she was ever diagnosed with depression.  Further, during the hearing, Ranes did not mention depression.  And the record suggests that Dr. Hyatt reached his conclusion that "emotional factors" affected Ranes on the basis of her own complaints.  Ranes stated on her "Disability Report - Appeal" form that she told Dr. Hyatt about her alleged depression and he suggested that her new medication for Crohn's disease might help. R. 141-42.  As the regulations make clear, a claimant's own statements regarding her symptoms are insufficient to support finding a medically determinable impairment.  *See* 20 C.F.R. § 404.1508.  Because substantial evidence does not support a finding that Ranes has the medically determinable impairment of depression, the court need not reach the question whether the ALJ properly analyzed its severity.  Accordingly, Ranes has failed to show that this case should be remanded based on the ALJ's step-two determination.

V

The court considers next whether the ALJ erred at step three when he determined that Ranes's weight loss due to Crohn's disease did not meet a listing-level impairment.

- 11 -

A

A claimant who has an impairment or combination of impairments that meets or medically equals a listing and that meets the duration requirement is entitled to a finding of disability without consideration of age, education, or work experience. 20 C.F.R. § 404.1520(d) (2009). At issue in the present case is Listing 5.08, which specifies the following impairment: "Weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI [body mass index][2] of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." 20 C.F.R. Part 404, Subpart P, Appendix 1 (2009).

B

As described by the ALJ, the evidence shows that Ranes weighed 100 lbs. on January 28, 2006, when she presented to a medical center complaining of vomiting, diarrhea, and abdominal pain. Then, on February 14, 2006, Ranes underwent an internal medicine consultative examination by a state agency physician, Ingrid Zasterova, M.D. ("Dr. Zasterova"). Dr. Zasterova noted that Ranes weighed 115 lbs. and that her Crohn's disease was "relatively stable" at that time. R. 15, 189-90. A few months later, on June 8, 2006, Ranes saw her treating gastroenterologist, Dr. Hyatt, who determined that she weighed 112 lbs. and noted that she was

---

[2]BMI is the ratio of a claimant's weight to the square of her height. 20 C.F.R. Part 404, Subpart P, Appendix 1 (2009).

"overall improved on Asacol" and had done "much better". *Id.* at 15, 205.  Over one year later, on October 24, 2007, Dr. Hyatt again examined Ranes, determined that she weighed 118 lbs, and noted that she had done "relatively well, but she is taking her meds." *Id.* at 15, 209.  At the hearing before the ALJ, held on June 9, 2008, Ranes testified that she weighed 111 lbs. and that her weight had been down to 103 or 104 lbs. the prior week.

According to Sterling E. Moore, M.D. ("Dr. Moore"), the medical expert who testified at the hearing, Ranes's BMI was below 17.50 when she weighed 112 lbs., and her BMI was above 17.50 when she weighed 118 lbs.  Dr. Moore also testified that, although Listing 5.08 had been recently revised to be more "liberal," Ranes's weight loss due to Crohn's disease still "would not meet the new listing requirements, but clearly she has been close to that."  R. 234, 236.  "The problem" was the October 24, 2007 examination, at which she weighed 118 lbs.  R. 234.  The ALJ relied on Dr. Moore's testimony in determining that Ranes's weight loss did not satisfy the criteria of Listing 5.08.

C

In support of her contention that her weight loss meets Listing 5.08, Ranes focuses on the second criterion of the listing, which requires that a BMI less than 17.50 be "calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period."  20 C.F.R. Part 404, Subpart P, Appendix 1 (2009).

- 13 -

She points to the weight measurements taken in January 2006 (100 lbs.) and June 2006 (112 lbs.), which equaled a BMI less than 17.50.  She maintains that these measurements placed her within Listing 5.08 because they were taken over 60 days apart and within a consecutive 6-month period.  Ranes therefore contends that she is entitled to a presumptive finding of disability and that her subsequent October 2007 BMI of more than 17.50 should be analyzed under the standard for medical improvement and cessation of the period of disability.

The Commissioner counters that the ALJ properly relied on Dr. Moore's conclusion that Ranes' weight loss did not meet Listing 5.08.  The Commissioner also maintains that Ranes cannot satisfy the first criterion of the listing——"weight loss due to any digestive disorder despite continuing treatment as prescribed"——because her weight "continually improved."  D. Br. 9.

D

The parties' arguments raise the questions whether the ALJ, and Dr. Moore on whom he relied, properly interpreted Listing 5.08, and whether substantial evidence supports the ALJ's step-three determination.  Initially, the court notes that Ranes makes a persuasive argument that the ALJ misinterpreted the *second* criterion of the listing.  His interpretation, relying on Dr. Moore's testimony, would seem to require that a claimant's BMI measure below 17.50 not only twice at least 60 days apart and

- 14 -

within a consecutive 6-month period, but also 16 months later. This extends the durational requirement specified in the listing. If a claimant experiences weight loss due to any digestive disorder despite continuing treatment as prescribed, and satisfies the BMI requirements within the requisite time frame, she has met the listing. If over one year later her BMI has increased, this would be relevant to whether her disability has ended rather than to the initial determination of disability.

Nevertheless, the court holds that Ranes cannot meet Listing 5.08 because there is no substantial evidence that she meets its *first* criterion. "Listings criteria are demanding and stringent." *Washington v. Barnhart*, 413 F.Supp.2d 784, 793 (E.D. Tex. 2006) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Ranes must "provide and identify medical signs and laboratory findings that support *all* criteria for a Step 3 impairment determination." *Id*. During the six-month period on which Ranes relies (January to June 2006), she experienced overall weight gain. Her weight increased 15 lbs. from January 28, 2006 to February 14, 2006. Although by June 8, 2006 she had dropped 3 lbs., her weight of 112 lbs. still represented a 12% improvement over her January 28, 2006 weight of 100 lbs. Ranes therefore experienced net weight *gain* over the relevant period rather than "weight *loss* . . . despite continuing treatment as prescribed." 20 C.F.R. Part 404, Subpart P, Appendix 1 (2009) (emphasis added). Further, the record shows

- 15 -

that Ranes was responding positively to her Crohn's medication. The introduction to the digestive system listings explains that the SSA considers the effects of treatment on digestive disorders because these disorders frequently improve when treated.  20 C.F.R. Part 404, Subpart P, Appendix 1 (2009) (introduction to the "5.00 Digestive System" listings).  That a person's response to treatment is relevant to the step-three determination is made clear in Listing 5.08's requirement that weight loss be "*despite* continuing treatment as prescribed." 20 C.F.R. Part 404, Subpart P, Appendix 1 (2009) (emphasis added).  On June 8, 2006 Dr. Hyatt noted that Ranes was "overall improved on Asacol.  She has done much better." R. 205.  Although Ranes's BMI remained objectively low at the end of the relevant six-month period, she had experienced net improvement in her weight due to treatment.  In short, Ranes cannot meet Listing 5.08's first criterion because she experienced weight gain because of her treatment—not weight loss despite it. Accordingly, she is not entitled to remand based on the ALJ's step-three determination.

VI

The court now addresses Ranes's contention that the ALJ failed to properly consider the medical source opinions in the record.

- 16 -

A

The court initially reviews the medical source opinions that Ranes posits did not receive appropriate consideration. First, Ranes relies on certain limitations that Dr. Hyatt indicated on his September 2006 RFC Questionnaire. Specifically, Dr. Hyatt opined that Ranes would frequently experience pain or other symptoms sufficiently severe to interfere with attention or concentration; that she would require the discretion to shift positions at will from sitting, standing, or walking; that she would need the ability to take four to six unscheduled restroom breaks of fifteen-minute duration in an eight-hour workday; that she could lift ten lbs. occasionally and less than ten lbs. frequently; and that her impairments or treatment would cause her to be absent from work more than four days per month.

Second, Ranes points to the opinion of the consultative examiner, Dr. Zasterova, limiting her ability to stand and walk. During Dr. Zasterova's February 2006 examination, she made the following pertinent findings: Ranes had a full range of motion in all joints, muscle strength of 5/5 in all extremities, and did not have any neurological deficits (e.g., normal station and gait, ability to walk on toes, heels, and tandem, ability to squat completely and raise herself up unaided, ability to walk without assistive devices, and no muscle atrophy). As to Ranes's work-related functions, Dr. Zasterova opined that Ranes could sit longer

- 17 -

than two hours, stand for five to thirty minutes, walk one to two blocks, lift five to thirty pounds, handle objects with fine finger control well and that her hearing, speaking, and vision were intact.

B

"The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Accordingly, the court summarizes the portions of the ALJ's decision relevant to Ranes's contention that he failed to properly consider Dr. Hyatt's and Dr. Zasterova's opinions.

Initially, in connection with his step-two analysis, the ALJ described in detail Dr. Zasterova's findings and noted Ranes's statement to Dr. Zasterova that she had been treated by a gastroenterologist once per month since being diagnosed with Crohn's disease in 2003. He then identified Dr. Hyatt as "[t]he claimant's gastroenterologist," R. 15, and recounted the limitations that Dr. Hyatt indicated in his RFC Questionnaire. The ALJ additionally noted that Dr. Hyatt had prescribed Asacol, Phenergan, and Vicodin, and he specified some findings from Dr. Hyatt's June 2006 and October 2007 examinations, including the October 2007 observation that Ranes had done "reasonably well"[3]

---

[3]Dr. Hyatt's October 2007 note states that Ranes had done "relatively well" rather than "reasonably well." R. 209. This minor error by the ALJ is immaterial to the court's analysis and

but was still experiencing episodes of nausea.  R. 17.

Subsequently, at step four, the ALJ determined that Ranes retained the RFC[4] to do the following:

> occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and push and/or pull (including operation of hand and foot controls) consistent with her strength limitations.  The claimant's ability to perform the full range of light work activity, as that phrase is defined in . . . 20 C.F.R. §§ 404.1567(b) and 416.967(b) of the regulations, is reduced by the need to be near bathroom facilities.

R. 16.

In assessing Ranes's RFC, the ALJ first reviewed the testimony she gave at the hearing.  He noted her alleged symptoms of weight fluctuation, daily episodes of diarrhea, twice-weekly episodes of vomiting, bleeding from the rectum, and pain.  Additionally, he recounted her testimony that she had been required to leave her job because her Crohn's disease caused her to be frequently absent or tardy; that her condition had worsened since that time; that her

_____

conclusion.

[4]RFC refers to the most that a claimant is able to do despite her physical and mental limitations.  20 C.F.R. § 404.1545(a). Assessing RFC involves an evaluation of the limitations on the claimant's work-related abilities imposed by all of her medically determinable impairments, including non-severe impairments, and their related symptoms.  *See id*. § 404.1545(a)-(d).

- 19 -

medications caused side effects of pain, sleepiness, and nausea;
and that she must wear Depends when out in public and is
embarrassed by the smell.  Further, the ALJ described her alleged
daily activities, limited to driving her daughter to school,
preparing meals most of the time, and sometimes attending her
daughter's cheerleading events, but spending most of the day lying
down, engaging in no housework or recreational activities, and
relying on her husband and children to do the laundry, cleaning,
and grocery shopping.

The ALJ then considered Ranes's statements in the Daily
Activity Questionnaire.  He found that her statement that she does
not exercise except for performing household chores to be
inconsistent with her hearing testimony that she does not do
housework.  He further pointed to her statement that her activities
were not limited in any way unless she was having a "flare-up," R.
17, and reasoned: "The duration and frequency of the claimant's
flare-ups appear to be the determining factor in making a finding
of whether she is able to sustain work in a competitive work
environment." *Id.*

In the next section of his decision, the ALJ addressed
together the supportability of Dr. Hyatt's opinions and Ranes's
credibility.  He first recounted Dr. Moore's analysis of Dr.
Hyatt's opinions.  Dr. Moore opined that he found no objective
basis for these limitations and that Dr. Hyatt likely based them on

Ranes's "subjective complaints". *Id.* Dr. Moore reasoned that Ranes was not visiting the emergency room or receiving medical treatment at a frequency that would justify Dr. Hyatt's opinion that she would miss work more than four days each month. He further opined that she would be capable of light work as long as she had near access to a bathroom. Additionally, the ALJ found that Ranes's allegation that her condition had worsened since quitting work was inconsistent with Dr. Hyatt's October 2007 opinion that she was doing "reasonably well" and reasoned that Ranes did not aver that her medications were ineffective in reducing her symptoms, though they produced nausea as a side effect. He further reasoned:

> [T]he claimant's own clinical records, as detailed above, provide no basis for the extreme limitations imposed by Dr. Hyatt, as there is no indication from the medical records that her flare-ups are occurring at the frequency she alleges. Surely, if her flare-ups are as severe and frequent as alleged, the claimant would have been seen at the emergency room on a more frequent basis or would have seen her doctor more often. At the consultative examination, the claimant walked without the aid of assistive devices, exhibited full range of motion and examination did not show any neurological deficits. As such, I am unable to attach any significant weight to the opinion of Dr. Hyatt . . . . *See* 20 C.F.R. § 404.1527 and 416.927 (2007) and Social Security Rulings 96-2p and 96-5p. As a result, I am unable to find the claimant's allegations totally credible.

R. 17-18. The ALJ concluded that given the "objective findings" and "numerous inconsistencies," Ranes's "subjective allegations and

contentions of pain and resulting symptomatology are exaggerated and not entirely credible." *Id.* at 18.

Having thus assessed Ranes's RFC, the ALJ next considered whether she could perform her past relevant work as a dental hygienist. He relied on the testimony of the vocational expert ("VE") that "this type of occupation would not allow for frequent bathroom breaks, as a dental hygienist would not be able to just leave in the middle of a procedure." *Id.* The ALJ accordingly concluded that Ranes could not perform her past relevant work.

Proceeding to step five and placing the burden of proof on the Commissioner, the ALJ determined that Ranes was not disabled because she could perform jobs existing in substantial numbers in the national economy. The ALJ relied on the VE's testimony that service-related and clerical jobs would be the most likely to permit frequent, unpredicted bathroom breaks and that considering her age, education, work experience, and RFC, Ranes could perform the representative jobs of housekeeper, office clerk, and mail clerk.

C

Because a treating physician is "familiar with the claimant's impairments, treatments, and responses," his opinion "on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

substantial evidence." *Newton*, 209 F.3d at 455 (citations, alteration, and quotation marks omitted). The ALJ may give little or no weight to a treating source's opinion, however, if good cause is shown. *Id.* at 455-56. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456. But, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453. Section 404.1527(d)(2) of the SSA regulations sets forth six factors ("six-factor test") that the ALJ must consider before giving less than controlling weight to a treating source's opinions: (1) length of treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) the support of the source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the source. 20 C.F.R. § 404.1527(d)(2); *see also Newton*, 209 F.3d at 456.

D

Ranes contends that the ALJ failed to properly consider Dr. Hyatt's and Dr. Zasterova's opinions because he did not evaluate them under the six-factor test and instead relied on the opinion of Dr. Moore, a non-examining physician.  She argues that due to this failure, the ALJ erred in assessing her RFC and determining that she could maintain employment in a service-related or clerical position.  First, regarding the RFC determination, Ranes contends that the ALJ should not have disregarded Dr. Hyatt's and Dr. Zasterova's opinions concerning her ability to lift, stand, and walk and that he should have concluded that she could not meet the criteria of light work in these areas.  She further argues that the ALJ's RFC determination lacks substantial evidence because it is based on the ALJ's "unfounded" speculation that the relative infrequency of her doctor visits indicates an improvement in her symptoms, P. Br. 18, and posits instead that it is "financial constraints" that limit her to visiting Dr. Hyatt only about every six months, *id.* at 17.

Second, regarding her ability to maintain employment in a service-related or clerical position, Ranes points to the VE's testimony that a person who missed work more than four days per month could not maintain employment and that service-related and clerical jobs usually permit some discretion for restroom breaks for "a short duration on an hourly basis" or "about once an hour,

- 24 -

usually of a five minute duration." R. 241. Ranes argues that Dr. Hyatt's opinion that she would need to miss work more than four days per month and take frequent fifteen-minute breaks "establishes" that she could not maintain employment in a service-related or clerical position. P. Br. 17.

The Commissioner responds that the ALJ properly considered and weighed all medical source opinions. The Commissioner maintains that the ALJ was not required to examine the medical opinions under the six-factor test because the record contained "competing first-hand medical evidence" that supported the ALJ's determination that Ranes could perform light work if she had nearby bathroom access. D. Br. 14. Further, the Commissioner contends that the ALJ had good cause to discredit Dr. Hyatt's and Dr. Zasterova's opinions. He argues that the medical evidence does not support the limitations imposed by Dr. Hyatt; that the ALJ properly relied on Ranes's relatively infrequent doctor and emergency room visits; that Ranes cannot assert that financial reasons account for this infrequency because there is no evidence that she explored healthcare options for the indigent; and that Dr. Zasterova's opinion is not supported by her own findings.[5]

_____

[5]Additionally, the court notes that the Commissioner states in his brief that a treating physician's opinion may be disregarded if it is brief and conclusory but does not specifically argue that Dr. Hyatt's opinions fall into this category. Ranes argues in reply that Dr. Hyatt's opinions are not brief and conclusory because they related to her ability to perform work-related activities. The court agrees. *See Policy Interpretation Ruling Titles II and XVI:*

E

1

The court first considers whether the ALJ failed to properly consider Dr. Zasterova's opinion regarding Ranes's ability to stand and walk. Although the ALJ did not specifically discuss this opinion, he clearly did not assign it controlling weight because his light-work RFC determination requires the ability to stand longer than thirty minutes and walk more than two blocks. Thus the pertinent question is whether the ALJ was required to analyze Dr. Zasterova's opinion under the six-factor test before he implicitly rejected it. The court concludes that he was not so required. The record lacks any evidence that Dr. Zasterova treated Ranes for a medical condition. Rather, it shows that she was a consulting physician who examined Ranes on one occasion "at the request of the Commissioner." P. Br. 4; *see also* 20 C.F.R. § 404.1502 (defining a "nontreating source" as one "who has examined [a claimant]" but does not have an "ongoing treatment relationship," with her, such as a "consultative examiner", and providing that a "treating source" does not include a medical source whose relationship with

_____

*Medical Source Opinions on Issues Reserved to the Commissioner*, SSR 96-5p, 1996 WL 374183, at *5 (S.S.A. 1996) ("A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence . . . when assessing an individual's RFC.); *id.* ("Adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions.").

a claimant is based "solely on [her] need to obtain a report" in support of a disability claim). *Newton*'s requirement of a detailed, six-factor analysis, however, applies only to the opinions of a "treating" physician—not one who merely examines a claimant. *Newton*, 209 F.3d at 453; *see also Taylor v. Astrue*, 245 Fed. Appx. 387, 391 (5th Cir. 2007) (per curiam) (holding that detailed analysis under six-factor test not required absent "longitudinal pattern of care"); *Lewis v. Barnhart*, 460 F.Supp.2d 771, 785 (S.D. Tex. 2006) (holding same in relation to opinion of "consultative examiner"); *Whytus v. Astrue*, No. 3:07-CV-0182-D, slip op. at 14-15 (N.D. Tex. Aug. 13, 2007) (Fitzwater, J.) ("[I]n the interest of administrative efficiency, ALJs are not required to give detailed reasons for discounting the opinions of non-treating medical sources."). Therefore, Ranes is not entitled to remand based on the ALJ's failure to evaluate Dr. Zasterova's opinion under the six-factor test.

Further, substantial evidence supports the ALJ's determination that Ranes can perform the standing and walking requirements of light work provided that she has near bathroom access. Dr. Zasterova found that Ranes exhibited full range of motion in all joints, walked without the aid of assistive devices, and did not have any neurological deficits (e.g., she had normal station and gait, ability to walk on toes, heels, and tandem, ability to walk without assistive devices, and no muscle atrophy). These findings

provide a reasonable basis for the standing and walking components of the ALJ's RFC determination.

2

Next, the court addresses whether the ALJ properly considered the limitations that Dr. Hyatt indicated on his RFC Questionnaire. Because Dr. Hyatt undisputedly treated Ranes for Crohn's disease, and because the ALJ rejected his "extreme limitations," R. 17, the pertinent questions are whether he followed the proper analysis in considering these opinions and whether he had good cause to discount them.

The court first considers the Commissioner's argument that the ALJ was not required to employ the six-factor test because the record contained competing firsthand medical evidence. In assessing Ranes's RFC, the ALJ cited Dr. Zasterova's findings that "the claimant walked without the aid of assistive devices, exhibited full range of motion and examination did not show any neurological deficits." R. 18. The court concludes that Dr. Zasterova's opinions that Ranes had full range of motion in all joints and did not have any neurological deficits (e.g., no muscle atrophy) constitutes reliable medical evidence from an examining physician that controverts Dr. Hyatt's opinion that Ranes can lift only 10 lbs. occasionally and less than 10 lbs. frequently. Dr. Zasterova's opinion is inapposite, however, to the other limitations that Dr. Hyatt indicated (i.e., that Ranes would need

- 28 -

to shift positions at will, take four to six fifteen-minute breaks, miss more than four days of work per month, and would frequently experience pain or other symptoms severe enough to interfere with attention or concentration).  Therefore, the court concludes that the ALJ had good cause to discount, and was not required to employ the six-factor test, as to Dr. Hyatt's lifting limitation but that he was required to conduct a detailed analysis under the six-factor test before discounting the other limitations that Dr. Hyatt indicated.

In considering whether the ALJ conducted a sufficient six-factor analysis, the court initially observes that an ALJ is not required to recite or discuss each factor in a sequential or formulaic fashion.  *See Wiltz v. Comm'r of Soc. Sec. Admin.*, 412 F.Supp.2d 601, 608 (E.D. Tex. 2005) ("[T]he adjudicator [need only] 'consider' the factors.  Neither the regulation nor interpretive case law requires that an ALJ specifically name, enumerate, and discuss each factor in outline or other rigid, mechanical form.").  Evaluating the whole of the ALJ's analysis, and mindful of substance over form, the court concludes that he engaged in a sufficiently detailed analysis that encompassed the six factors and that he had good cause to discount Dr. Hyatt's opinions.

Factors one through three and factor six all relate to the treatment relationship generally.  As to length of treatment relationship and specialization of the source (factors one and

six), the ALJ noted Ranes's statement to Dr. Zasterova that she had been seeing a gastroenterologist since her 2003 diagnosis of Crohn's disease and later identified Dr. Hyatt as "[t]he claimant's gastroenterologist," R. 15, thus indicating that Dr. Hyatt treated Ranes and specialized in gastroenterology.   Regarding frequency of examination (factor two), the relative *infrequency* of Ranes's doctor visits was a significant factor in the ALJ's conclusion that she was not experiencing flare-ups of Crohn's disease as frequently as she alleged; this, in turn, led him to conclude that Dr. Hyatt's opinions were not supported by the record and that Ranes's testimony concerning the severity of her symptoms was not entirely credible.   Further, as to the nature and extent of Dr. Hyatt's treatment relationship with Ranes (factor three), the ALJ specified the medications that Dr. Hyatt had prescribed, noted some findings from his June 2006 and October 2007 examinations, and detailed the limitations that he had indicated on the RFC Questionnaire. Therefore, the court concludes that the ALJ appropriately considered factors one through three and factor six.

Factors four and five—the support of the source's opinion afforded by the medical evidence of record and the consistency of the opinion with the record as a whole—entail consideration of the source's opinions in relation to the evidentiary record.   In this regard, the ALJ reasoned that Ranes's medical evidence provided "no basis" for the limitations that Dr. Hyatt indicated.   R. 17.   He

agreed with Dr. Moore that her record lacked evidence of sufficiently frequent doctor or emergency room visits to justify these limitations and that Dr. Hyatt likely based them on Ranes's subjective complaints.  The ALJ is justified in relying on Dr. Moore's expert testimony if substantial evidence exists to support it.  The court concludes that it does.  *See Cline v. Astrue*, 577 F.Supp.2d 835, 845-46 (N.D. Tex.) (Ramirez, J.), *recommendation adopted*, (N.D. Tex. 2008) (Godbey, J.) (order) (holding that ALJ properly relied on opinion of non-examining medical expert over that of examining physician where six-factor test provided "sufficient basis" to do so, and substantial evidence supported medical expert's testimony).  The frequency with which Ranes received medical treatment is logically relevant to the frequency with which she experienced flare-ups of her Crohn's disease that would justify Dr. Hyatt's limitations.  Although Ranes argues that she is prevented by financial constraints from seeing Dr. Hyatt more often, there does not appear to be any evidence of this beside her own testimony.  And, as the Commissioner points out, there is no evidence that she explored any available treatment options for the indigent.  *See Mason v. Comm'r of Soc. Sec. Admin.,* 2009 WL 400831, at *9 (N.D. Tex. Nov. 20, 2008) (Ramirez, J.), *recommendation adopted*, (N.D. Tex. Feb. 13, 2009) (O'Connor, J.) (order) (holding that ALJ need not consider claimant's alleged inability to pay for treatment where there was no evidence that she

had "sought out free or low-cost treatment") (citing *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186, at *8 (S.S.A. 1996) ("Credibility Ruling")).   Therefore, the court holds that the ALJ properly considered factors four and five and that these factors provided good cause for him to discount Dr. Hyatt's opinions regarding Ranes's limitations.

Accordingly, the court rejects Ranes's argument that the ALJ's decision should be remanded for failing to properly consider the medical source opinions in the record.

### VII

Finally, the court turns to Ranes's contention that the ALJ did not appropriately evaluate her credibility.

### A

Credibility determinations are generally the province of the ALJ, and his credibility evaluations are entitled to deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).   The subjective complaints of a claimant must be corroborated by objective medical evidence demonstrating the existence of the symptoms before a disability may be determined. *See Wren*, 925 F.2d at 129; 20 C.F.R. § 404.1528(a) (2009) ("[Claimant's] statements alone are not enough to establish that there is a physical or

mental impairment."). The ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Credibility Ruling, 1996 WL 374186, at *2.

B

Ranes argues that the ALJ's credibility analysis is insufficient because he failed to specify the inconsistencies on which he relied and thus "has left it for a reviewing court to guess as to [his] findings." P. Br. 20. She maintains that the ALJ's RFC determination is not supported by substantial evidence to the extent that it is based on the "defective" credibility determination. *Id.* The Commissioner responds that the ALJ appropriately considered Ranes's credibility because he thoroughly reviewed the record and adequately explained the inconsistencies that he found.

C

In reaching his conclusion that Ranes's allegations regarding her pain and other symptoms were exaggerated and not entirely credible, the ALJ pointed both to the internal inconsistency of Ranes's statements about her daily activities and to the lack of objective medical evidence to support the alleged severity and

- 33 -

frequency of her symptoms.  Specifically, he noted the existence of a conflict between Ranes's statements in the Daily Activity Questionnaire and at the hearing regarding whether she did housework, and he reasoned that she did not allege that her medications were ineffective in reducing her symptoms.  He also concluded that her allegation that her condition had worsened was inconsistent with Dr. Hyatt's opinion that she was doing reasonably well, and that she surely would have been to the doctor or the emergency room more often were her flare-ups "as severe and frequent as alleged."  R. 18.  The inconsistencies and absence of evidence that the ALJ cites in his ruling both explain and provide substantial evidence for his decision to discount Ranes's credibility.[6]  The court therefore rejects Ranes's contention that a remand is warranted on the ground that the ALJ failed to appropriately evaluate her credibility.

_____

[6]Additionally, the court notes that, in Ranes's brief, she cites the Credibility Ruling and lists the seven factors that it holds should guide an ALJ's credibility determination.  She does not specifically argue that the ALJ's assessment of her credibility is erroneous based on a failure to cite and discuss each of these factors.  But to the extent that she intends to make such an argument, the court rejects it.  The ALJ sufficiently considered and explained his decision regarding Ranes's credibility, and he is not required to engage in a formalistic analysis under the factors specified in the Credibility Ruling.  *See Williams v. Astrue*, 2008 WL 4490792, at *10 (N.D. Tex. Aug. 26) (Ramirez, J.), *recommendation adopted*, (N.D. Tex. Oct. 3, 2008) (Godbey, J.) (order) (holding that ALJ is not required "to separately evaluate each of the seven factors identified by SSR 96-7p" because such a requirement "would impose a formalistic rule on an area in which ALJs are given great deference").

*       *       *

Accordingly, for the reasons explained, the Commissioner's decision is

AFFIRMED.

August 14, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE